Bradley Election Case.

Argued March 19, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

64

*S. L. Gribbin* and *John L. Pipa*, with them *Daniel W. Kearney*, for appellant.

*Carl Rice*, for appellees.

Opinion by Mr. Justice Allen M. Stearne, April 12, 1945:

This appeal concerns the interpretation of amendments to the Election Code of 1937 pertaining to military ballots.

In the general election of November 7, 1944, there were to be elected, in the Second Legislative District of Northumberland County, two representatives in the General Assembly. In so far as the present controversy is concerned, the original return of the *civilian* vote (as distinguished from the vote of electors in actual military service), computed by the county election board on November 10, 1944, showed that appellee *Howells* had a plurality over appellant Bradley of 362 votes. Bradley immediately filed a petition for a recount of the civilian vote. Thereafter, the ballot boxes were opened and a recount made, again giving Howells a plurality, as corrected, of 337.

From November 22 to November 27, 1944, the county board computed the *military* ballots. The military and corrected civilian votes were then added together; the total indicated that *Bradley* had a plurality over Howells of 37 votes. Accordingly, on November 27, 1944, prior to any certification of the results, twelve petitions were presented for the opening of ballot boxes and recounting of votes from twelve election districts averring "that fraud, or error, though not manifest on the general return of votes made therefrom, was committed in the computation. . . ." Since the same questions were raised in all the petitions, it was agreed that testimony should

only be taken in regard to one and that its disposition should apply to all. Due notice was given to the candidates and their attorneys. In their presence, the ballot boxes were opened in court on December 1, 1944, and the vote recounted. No objections were made to the petitions, the condition of the boxes, or to the recount. The candidates and their attorneys inspected the ballot boxes and ballots as they were counted. Upon completing the recount, it became apparent that the previous result favoring Bradley had been erroneous. The correct total of the civilian and military votes resulted in *Howells'* election. On observing this unfavorable result and before the votes were officially totalled by the board, Bradley presented to the court a motion or request "to refuse to certify to the Northumberland County Board of Elections, erroneous entries made by election officers, or to direct the said Election Board to correct any entries previously made by it . . . [because] said petition was filed later than five (5) days after the completion of the computation and canvassing of all the returns of the County by the County Board. . . ." A motion was presented by Howells to dismiss Bradley's request and to certify the correct result. Before testimony was taken on December 6, 1944, Bradley presented a further request to dismiss the petition for want of jurisdiction. After the hearing, the court below dismissed Bradley's motions and requests; from that order, this appeal is taken.

The confusion apparent in this case is occasioned by inconsistencies in various amendments and supplements to the Election Code of 1937, P. L. 1333, 25 PS sections 2600, et seq. Section 1404, 25 PS section 3154, pertaining to computation and certification, provides: "(a) The county board shall, at noon on the third day following the primary or election . . . publicly commence the computation and canvassing of the returns, and continue the same from day to day until completed . . . . (f) . . . At the expiration of five days after the completion of

the computation of votes, in case no petition for a recount or recanvass has been filed in accordance with the provisions of this act, or upon the completion of the recount or recanvass if a petition therefor has been filed within five days after the completion of the computation of votes, the county board shall certify the returns so computed in said county in the manner required by this act. . . ."

The petition for recount in this case was presented in accordance with Section 1701, 25 PS section 3261, which provides: "(a) The court of common pleas, or a judge thereof, of the county in which any election district is located in which ballots were used, shall open the ballot box of such election district . . . and cause the entire vote thereof to be correctly counted . . . if three qualified electors of the election district shall file, as hereinafter provided, a petition duly verified by them, alleging that upon information which they consider reliable they believe that fraud or error, although not manifest on the general return of votes made therefrom, was committed in the computation of the votes cast. . . . (f) Ballot boxes may be opened under the provisions of this section at any time within four months after the date of the . . . election at which the ballots therein shall have been cast." It is further provided in Section 1703, 25 PS section 3263: "(a) If any petition to open a ballot box . . . shall have been presented, under the provisions of sections 1701 . . . before the certification of *all* the returns of the county, and, in no event, later than five (5) days after the completion of the computation and canvassing of *all* the returns of the county by the county board, and the court shall discover therein any fraud or error, the court shall correct, compute and certify to the county board the votes justly, regardless of any fraudulent or erroneous entries made by the election officer thereof, and the county board shall correct accordingly any entries previously made in the return of the county being prepared by it, or which have been prepared and not yet certified" (italics added).

It is clear, then, from these sections of the Election Code that computation of the *civilian* vote must begin on the third day following the election and that certification cannot be made until five days after the computation is completed. Further, the vote may be recounted and corrected if a petition alleging fraud or error is presented no later than five days after the completion of computation of *all* the returns of the county and before certification.

The petition in question was presented on November 27, 1944, the day on which the computation of the *military* vote was completed. Appellant contends that this was too late. He argues that the civilian and military votes must be computed and appealed from *separately*. Appellant admits in his motion or request that the petition must be "filed within five days from the completion of the said computation and canvassing of *all* the returns of the County by the said County Board" (italics supplied). He contends in effect, however, that "all the returns" means only the "civilian" returns. He attempts to support such distinction between the computation of civilian and military ballots by his interpretation of the various amendments to the original Election Code of 1937. He argues that the amendment of August 1, 1941, P. L. 672, section 4, 25 PS section 3133 (Section 1303, added), concerning voting by persons in actual military service, is impliedly repealed by Section 11 of the supplement to the Election Code of May 5, 1944, Ex. Sess., P. L. ———, No. 1, 25 PS section 4011.

The 1941 amendment states: "In the case of any election at which votes are cast by electors in actual military service under the provisions of this article, it shall be the duty of each county board of elections to *withhold* the completion of the computation of the returns of the county until the *second Friday* after such election, within which period all votes cast by electors of the county in actual military service as provided in this article shall be added to and included in its compu-

tation of the returns of such election, but not afterwards" (italics added). This "withholding" section in the 1941 amendment, appellant contends, was unnecessary. He admits, however, that it "was mandatory and in effect until changed by the Legislature". His contention is that this provision was impliedly repealed by the 1944 supplement to the Election Code, supra, which *omitted* the requirement for withholding. With this contention we cannot agree.

The purpose of the 1944 supplement as stated in Section 1, 25 PS section 4001, "is to enable every qualified elector of this Commonwealth in actual military service . . . during the continuance of the present war and six months thereafter, to vote . . . and this act shall be liberally construed to effectuate such purpose." Section 11, 25 PS section 4011, provides that the canvass of the official military ballots "shall begin . . . on the *third Wednesday* following the election and not before. . . ." and "Upon completion of the computation of the returns of the county, the votes cast upon the official military ballots shall be added to the other votes cast within the county."

It may thus be seen that the *time limitation* in the supplement of 1944 is inconsistent with that set out in the amendment of 1941. The supplement of 1944 provides that the canvass of military votes is to *begin* on the *third Wednesday* after the election; the amendment of 1941 states, in effect, that such canvass must be *completed* by the *second Friday* after the election. This inconsistency is only between the time within which the *military* votes are to be computed. It does not alter the provision for withholding the civilian vote until the military vote is completed. The 1941 amendment is therefore still operative as far as withholding the final result, since *it is obvious that both civilian and military votes must be added together before any *final* result can be obtained. The provision in the Act of 1944 that "the votes cast upon the official military ballots shall be

added to the other votes cast within the county" is not inconsistent with the 1941 Act. It is a mere *restatement* of the withholding provision and does not repeal it.

Appellant argues that such an interpretation of the amendment of 1941 and the supplement of 1944, when considered with Section 1404(f) of the original code, supra, makes a nullity of Section 302 as amended May 21, 1943, P. L. 353, 25 PS section 2642. It seems apparent the legislature intended this result in passing the temporary supplement of 1944. "If two acts which cover the same subject matter are repugnant in any of their provisions, the latter operates to the extent of the repugnancy as a repeal of the former; and it is not necessary that the latter act contain a provision expressly repealing the prior act or parts thereof": *Commonwealth v. Gross*, 145 Pa. Superior Ct. 92, 21 A. 2d 238.

Section 302 as amended in 1943 requires the county board "to certify, no later than the *third Monday* following the primary or election, the results thereof . . ." (italics added). As noted above, under the amendment of 1944, the canvass of military ballots cannot be begun until the *third Wednesday* following the election. Furthermore, under Section 1404(f) of the Election Code, supra, the board cannot certify the results of the election until five days after the computation is completed. Inasmuch as the canvass of the military votes is to *begin* on the third Wednesday (and will not necessarily be completed on that day), the legislature must have intended by necessary implication to suspend the amendment of 1943 for the duration of the present war and six months thereafter.

It is interesting to note herewith that appellant's theory is that computations of the civilian and military votes are "two separate and distinct matters." For this reason, he argues, the amendment of 1943, requiring certification, applies to the civilian vote, even though the computation of the military vote has not begun. How-

ever, in his brief, appellant admits that "certification cannot be made until *all* the ballots have been counted" (italics supplied), which necessarily includes *both* civilian and military votes.

It seems clear that the petition for recount was presented "before the certification of *all* the returns of the county", as expressly required by the statute. No evidence was produced to show that the vote was *finally* computed more than five days prior to November 27, 1944, the day on which the petition was presented. The primary purpose of Section 1701, under which the petition was presented, is to secure an accurate count and true return of the ballots actually cast: *Koch's Appeal*, 351 Pa. 544, 41 A. 2d 657; *Fishingcreek Township Election Case*, 144 Pa. Superior Ct. 277, 19 A. 2d 491. Such accurate count and true return having been made, the court below was therefore required to certify the vote. Compare *Armstrong's Appeal*, 293 Pa. 1, 141 A. 633.

The other contentions of appellant are without merit. Order affirmed at cost of appellant.